1   **BURSOR & FISHER, P.A.**
    L. Timothy Fisher (State Bar No. 191626)
2   Joel D. Smith (State Bar No. 244902)
    1990 North California Boulevard, Suite 940
3   Walnut Creek, CA  94596
    Telephone: (925) 300-4455
4   Facsimile:  (925) 407-2700
    E-Mail: ltfisher@bursor.com
5           jsmith@bursor.com

6   *Attorneys for Plaintiffs*

7

8                 **UNITED STATES DISTRICT COURT**

9                 **EASTERN DISTRICT OF CALIFORNIA**

10

11  DAKOTAH MASSIE and NEIL MANGLANI,          Case No. 1:20-CV-01560-NONE-JLT
    individually and on behalf of all others similarly
12  situated,

13                  Plaintiffs,                 **CORRECTED CLASS
                                                ACTION COMPLAINT**
14          v.

15  GENERAL MOTORS LLC and DECIBEL             **JURY TRIAL DEMANDED**
    INSIGHT, INC.,
16
17                  Defendants.

18

19

20

21

22

23

24

25

26

27

28

---

CORRECTED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED
CASE NO. 1:20-CV-01560-NONE-JLT

Plaintiffs Dakotah Massie and Neil Manglani ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action suit brought against Defendants General Motors LLC ("GM") and Decibel Insight, Inc. ("Decibel") (collectively, "Defendants") for wiretapping the electronic communications of visitors to websites owned and operated by Defendant GM (the "Websites").[1] The wiretaps, which are embedded in the computer code on the Websites, are used by Defendants to secretly observe and record website visitors' keystrokes, mouse clicks,[2] and other electronic communications, including the entry of Personally Identifiable Information ("PII"), in real time.  By doing so, Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 635, and invaded Plaintiffs' and Class members' privacy rights in violation of the California Constitution.

2.      In August 2020 and September 2020, Mr. Massie visited Chevrolet.com, one of the Websites.  Likewise, in September 2020, Mr. Manglani visited Chevrolet.com.  During the visits, Defendants recorded Plaintiffs' electronic communications in real time, including Plaintiffs' mouse clicks and keystrokes.

3.      Plaintiffs bring this action on behalf of themselves and a class of all persons in the state of California whose electronic communications were intercepted through the use of Defendants' wiretap on the Websites.

## THE PARTIES

4.      Plaintiff Dakotah Massie is a resident of Bakersfield, California and has an intent to remain there, and is therefore a domiciliary of California.  In August 2020 and September 2020,

---

[1] CHEVROLET, https://www.chevrolet.com/; BUICK, https://www.buick.com/; GMC, https://www.gmc.com/; CADILLAC, https://www.cadillac.com/.

[2] As used herein, the term "mouse clicks" also refers to "touch gestures" such as the "tap," "swipe," and similar gestures used on touchscreen devices.

1  prior to the filing of this lawsuit, Mr. Massie visited Chevrolet.com and browsed the vehicle

2  selections on the website.  Mr. Massie did not purchase anything while on Chevrolet.com.  Mr.

3  Massie was in Bakersfield when he visited the website.  During the visit, Mr. Massie's keystrokes,

4  mouse clicks, and other electronic communications were intercepted in real time and were disclosed

5  to Defendants GM and Decibel through the wiretap.  Mr. Massie was unaware at the time that his

6  keystrokes, mouse clicks, and other electronic communications were being intercepted in real-time

7  and would be disclosed to Decibel, nor did Mr. Massie consent to the same.

8        5.     Plaintiff Neil Manglani is a resident of Hacienda Heights, California and has an

9  intent to remain there, and is therefore a domiciliary of California.  In September 2020, prior to the

10  filing of this lawsuit, Mr. Manglani visited Chevrolet.com and browsed the vehicle selections on the

11  website.  Mr. Manglani did not purchase anything while on Chevrolet.com.  Mr. Manglani was at

12  work in Los Angeles, California when he visited the website.  During the visit, Mr. Manglani's

13  keystrokes, mouse clicks, and other electronic communications were intercepted in real time and

14  were disclosed to Defendants GM and Decibel through the wiretap.  Mr. Manglani was unaware at

15  the time that his keystrokes, mouse clicks, and other electronic communications were being

16  intercepted in real-time and would be disclosed to Decibel, nor did Mr. Manglani consent to the

17  same.

18        6.     Defendant General Motors LLC is a company incorporated under the laws of

19  Delaware with its principal place of business at 300 Renaissance Center, Detroit, Michigan 48265.

20        7.     GM does business throughout California and the entire United States.

21        8.     GM owns and operates the Websites.

22        9.     Defendant Decibel Insight, Inc. is a company incorporated under the laws of

23  Delaware with its principal place of business at 501 Boylston Street, Boston, Massachusetts 02116.

24        10.    Decibel is a marketing software-as-a-service ("SaaS") company.

25        11.    Decibel provides a feature called "Session Reply," which is at issue here and is

26  described more fully below.  At all relevant times here, GM has used Decibel's "Session Reply"

27  feature on the Websites.

28

**JURISDICTION AND VENUE**

12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

13.    This Court has personal jurisdiction over Defendants because each of the Defendants have purposefully availed themselves of the laws and benefits of doing business in this State, and Plaintiffs' claims arise out of each of the Defendants' forum-related activities.  Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this District.

14.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

**STATEMENT OF FACTS**

**I.**    **Overview Of The Wiretaps**

15.    Defendant Decibel develops a software of the same name that provides marketing analytics.

16.    One of Decibel's features is called "Session Replay," which purports to help businesses improve their website design and customer experience.

17.    Session Replay provides a real-time recording of a user's interactions on a website. Decibel says that Session Replay "tracks and records every session to ensure you have the details you need to better understand the customer online journey, troubleshoot errors, and put context around known issues."

18.    Decibel also notes "[f]rom start to finish, you get to see every click, scroll, mouse movement, and page view."

19.    Session Replay is used whether a consumer is browsing a website on their desktop, mobile device, tablet, or mobile application.

20.    A marketing video on Decibel's website demonstrates how Session Replay works. In the video, a user's individual mouse movements, clicks, and keystrokes are mapped and recorded:



21.    During the above-pictured portion of the video, a narrator states that "Decibel records every session to ensure that you have the details you need to better understand the customer online journey."

22.    In the next segment of the video, the narrator states that "All user and device interactions such as mouse movements, zooming, rotating, and bird's nests[3] are displayed":

//

//

//

//

//

---

[3] "Bird's nest behavior refers to when a user rapidly shakes their mouse around, leaving a jumbled mouse trail that, in session replays, resembles a bird's nest."  BIRD'S NEST BEHAVIOR, https://decibel.com/digital-experience-glossary/birds-nest-behavior/.



23.     During this portion of the video, the narrator describes the recordings as "video-accurate renderings of real visits to your web properties."

24.     During the final segment of the video, the narrator says companies can "[e]asily share your findings with other stakeholders by favoriting, commenting on, and sharing session replays from directly inside the product":

 

25.     Finally, Decibel notes on its website that its "AI already watches back every single session replay automatically."

26.     Through Session Replay, Decibel records a website user's interactions locally in the user's browser and transmits that information to Decibel's recording servers.  Decibel then makes the information available to its clients.

27.     Technology like Decibel's is not only highly intrusive, but dangerous.  A 2017 study by Princeton University found that session recording technologies like Session Replay were collecting sensitive user information such as passwords and credit card numbers.  The research notes that this wasn't simply the result of a bug, but rather insecure practices.  Thus, technologies such as Decibel's can leave users vulnerable to data leaks and the harm resulting therefrom.

28.     Indeed, Decibel itself recognizes the perils of Session Replay, stating on its website that "any tool used to record user interactions and behaviors will bring a privacy concern.  The biggest worries come up surrounding the potential compromise of site visitors' personal initiable information (PII) – like names, phone numbers, emails, and more."

29.     Decibel's business model involves entering into voluntary partnerships with various companies and providing their software to their partners.

30.     One of Decibel's partners is Defendant GM.

31.     GM utilizes Decibel's software on the Websites.

32.     GM knows that Decibel's software captures the keystrokes, mouse clicks and other communications of visitors to its website, and pays Decibel to supply that information.

33.     Pursuant to an agreement with Decibel, GM enabled Decibel's software by voluntarily embedding Decibel's software code on the Websites.

34.     As currently deployed, Decibel's software, as employed by GM, functions as a wiretap.

II.     **Defendants Wiretapped Plaintiffs' Electronic Communications**

35.     In August 2020 and September 2020, Mr. Massie visited Chevrolet.com and browsed the vehicle selections.  Mr. Massie did not purchase anything.

36.     Likewise, in September 2020, Mr. Manglani visited Chevrolet.com and browsed the

1  vehicle selections.  Mr. Manglani did not purchase anything.

2      37.  During those visits, the Session Replay feature in Decibel's software captured each

3  of Plaintiffs' keystrokes and mouse clicks on the Websites.  The Decibel wiretap also captured the

4  date and time of the visits, the duration of their visits, Plaintiffs' IP addresses, their location at the

5  time of the visits, their browser types, and the operating system on their devices.

6      38.  Decibel's recording of keystrokes, mouse clicks, data entry, and other electronic

7  communications begins the moment a user accesses or interacts with the Websites.

8      39.  When users access the Websites and make a purchase, they enter their PII.

9  Decibel's software captures these electronic communications throughout each step of the process.

10      40.  Decibel's software captures, among other things:

11          (a)  The user's mouse clicks;

12          (b)  The user's keystrokes;

13          (c)  The user's name;

14          (d)  The user's zip code;

15          (e)  The user's phone number;

16          (f)  The user's e-mail address;

17          (g)  The user's IP address; and

18          (h)  The user's their location at the time of the visit.

19      41.  Crucially, Defendant GM does not ask users, including Plaintiffs, whether they

20  consent to being wiretapped by Decibel.  Users are never actively told that their electronic

21  communications are being wiretapped by Decibel.

22  **CLASS ACTION ALLEGATIONS**

23      42.  Plaintiffs seek to represent a class of all California residents who visited the

24  Websites, and whose electronic communications were intercepted or recorded by Decibel.

25  Plaintiffs reserve the right to modify the class definition as appropriate based on further

26  investigation and discovery obtained in the case.

27      43.  Members of the Class are so numerous that their individual joinder herein is

28  impracticable.  On information and belief, members of the Class number in the thousands.  The

1    precise number of Class members and their identities are unknown to Plaintiffs at this time but may

2    be determined through discovery.  Class members may be notified of the pendency of this action by

3    mail and/or publication through the distribution records of Defendants.

4         44.    Common questions of law and fact exist as to all Class members and predominate

5    over questions affecting only individual Class members.  Common legal and factual questions

6    include, but are not limited to, whether Defendants have violated the California Invasion of Privacy

7    Act ("CIPA"), Cal. Penal Code § 631 and invaded Class members' privacy rights in violation of the

8    California Constitution; and whether Class members are entitled to actual and/or statutory damages

9    for the aforementioned violations.

10        45.    The claims of the named Plaintiffs are typical of the claims of the Class because the

11   named Plaintiffs, like all other Class members, visited the Websites and had their electronic

12   communications intercepted and disclosed to Decibel through the use of Decibel's wiretaps.

13        46.    Plaintiffs are adequate representatives of the Class because their interests do not

14   conflict with the interests of the Class members they seeks to represent, they have retained

15   competent counsel experienced in prosecuting class actions, and he intends to prosecute this action

16   vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and

17   their counsel.

18        47.    The class mechanism is superior to other available means for the fair and efficient

19   adjudication of the claims of Class members.  Each individual Class member may lack the resources

20   to undergo the burden and expense of individual prosecution of the complex and extensive litigation

21   necessary to establish Defendants' liability.  Individualized litigation increases the delay and

22   expense to all parties and multiplies the burden on the judicial system presented by the complex

23   legal and factual issues of this case.  Individualized litigation also presents a potential for

24   inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer

25   management difficulties and provides the benefits of single adjudication, economy of scale, and

26   comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment

27   of the liability issues will ensure that all claims and claimants are before this Court for consistent

28   adjudication of the liability issues.

CORRECTED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED      8
CASE NO. 1:20-CV-01560-NONE-JLT

48.     Plaintiffs bring all claims in this action individually and on behalf of members of the Class against Defendants.

### COUNT I
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 631**

49.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

50.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

51.     To establish liability under section 631(a), Plaintiffs need only establish that Defendants, "by means of any machine, instrument, contrivance, or in any other manner," did any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> *Or*

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

> *Or*

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

> *Or*

> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

52.     Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email.  *See Matera v. Google Inc.*, 2016 WL 8200619, at *21

(N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

53.     Decibel's software, including the Session Replay feature, is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

54.     At all relevant times, by using Decibel's technology, Defendants intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiffs and Class members on the one hand, and the Websites on the other hand.

55.     At all relevant times, by using Decibel's technology, Defendants willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiffs and putative Class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

56.     Defendants aided, agreed with, and conspired with each other to implement Decibel's technology and to accomplish the wrongful conduct at issue here.  In addition, GM employed Decibel to accomplish the wrongful conduct at issue here.

57.     Plaintiffs and Class members did not consent to any of Defendants' actions in implementing Decibel's wiretaps on the Websites.  Nor have Plaintiffs nor Class members consented to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiffs and Class members' electronic communications.

58.     The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

59.     Unless enjoined, Defendants will continue to commit the illegal acts alleged here. Plaintiffs continue to be at risk because they frequently use the internet for shopping, and they continue to desire to use the internet for that purpose, including for the purpose of shopping for

vehicles. Defendant Decibel provides its software, including the Session Replay feature, to many other website operators who offer a wide array of services. For many websites that Plaintiffs may or are likely to visit in the future, they have no practical way to know if their website communications will be monitored or recorded by Decibel.

60. Plaintiffs and Class members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

**COUNT II**
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 635**

61. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

62. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

63. California Penal Code § 635 provides, in pertinent part:

> Every person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another, or any device which is primarily or exclusively designed or intended for the unauthorized interception or reception of communications between cellular radio telephones or between a cellular radio telephone and a landline telephone in violation of Section 632.5, or communications between cordless telephones or between a cordless telephone and a landline telephone in violation of Section 632.6, shall be punished by a fine not exceeding two thousand five hundred dollars.

64. At all relevant times, by implementing Decibel's wiretaps, each Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another.

65. Decibel's code is a "device" that is "primarily or exclusively designed" for eavesdropping. That is, the Decibel's code is designed to gather PII, including keystrokes, mouse clicks, and other electronic communications.

---

CORRECTED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    11
CASE NO. 1:20-CV-01560-NONE-JLT

66.     Plaintiffs and Class members did not consent to any of Defendants' actions in implementing Decibel's wiretaps.

67.     Plaintiffs and Class members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

### COUNT III
### Invasion Of Privacy Under California's Constitution

68.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

69.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants.

70.     Plaintiffs and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various Internet sites without being subjected to wiretaps without Plaintiffs' and Class members' knowledge or consent.

71.     At all relevant times, by implementing Decibel's wiretaps on GM's Websites, each Defendant intentionally invaded Plaintiffs' and Class members' privacy rights under the California Constitution, and procured the other Defendant to do so.

72.     Plaintiffs and Class members had a reasonable expectation that their PII and other data would remain confidential and that Defendants would not install wiretaps on the Websites.

73.     Plaintiffs and Class members did not consent to any of Defendants' actions in implementing Decibel's wiretaps on the Websites.

74.     This invasion of privacy is serious in nature, scope and impact.

75.     This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

76.     Plaintiffs and Class members seek all relief available for invasion of privacy claims under California's Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

      (a)    For an order certifying the Class under Rule 23 and naming Plaintiffs as the representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

      (b)    For an order declaring that the Defendants' conduct violates the statutes referenced herein;

      (c)    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

      (d)    For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

      (e)    For prejudgment interest on all amounts awarded;

      (f)    For an order of restitution and all other forms of equitable monetary relief;

      (g)    For injunctive relief as pleaded or as the Court may deem proper; and

      (h)    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues so triable.

Dated: January 21, 2021

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: ___/s/ L. Timothy Fisher___
        L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
jsmith@bursor.com

*Attorneys for Plaintiffs*