# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAKOTAH MASSIE, et al., | Case No.: 1:20-cv-01560-JLT |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND TRANSFERRING THE ACTION TO THE DISTRICT OF DELAWARE |
| v. | |
| GENERAL MOTORS COMPANY, et al., | (Docs. 29, 30) |
| Defendants. | |

On April 12, 2021, Defendants General Motors LLC and Decibel Insight, Inc. moved the Court to dismiss the action for lack of personal jurisdiction, or in the alternative, seek transfer of this action. (Docs. 29, 30.) Plaintiffs filed oppositions on May 3, 2021. (Docs. 31, 32.) On May 17, 2021, GM filed a reply (Doc. 33) and Decibel filed a reply (Doc. 34). For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction and **TRANSFERS** the action to the United States District Court for the District of Delaware.

## I.     Factual Allegations

General Motors LLC operates websites that are accessible throughout the United States (and internationally), including by California residents. (See Doc. 29 at 8.) Plaintiffs allege that GM owns and operates websites for its Chevrolet, Buick, GMC, and Cadillac brands. (See Doc. 25, First Amended Complaint, at ¶¶ 1, 8.) Defendant Decibel developed a software of the same name that provides marketing analytics, and one of Decibel's features is called Session Replay. (Id. at ¶¶ 18-19.)

1

Plaintiffs allege that GM partnered with Decibel to use Decibel's Session Replay software. (Id. ¶¶ 19-20, 33-37.) According to the first amended complaint, the Session Replay software captures website visitors' mouse clicks, keystrokes, names, zip codes, phone numbers, email addresses, IP addresses, and locations at the time of the visit. (Id. ¶ 44.) Plaintiffs allege that GM captured their own information using Session Replay when they purportedly visited the Chevrolet website in August and September 2020. (Id. ¶¶ 2, 4-5, 39-41.) Plaintiffs allege that they are California residents and that they were physically located in California when they visited GM's nationally accessible Chevrolet website. (Id. ¶¶ 4-5.) Based on these allegations, Plaintiffs assert claims against both Defendants for violations of the California Invasion of Privacy Act, Cal. Penal Code §§ 631 and 635, and for invasion of privacy under the California Constitution, and a claim against Decibel for violation of the Federal Wiretap Act, 18 U.S.C. § 2512. (See id. ¶¶ 59-96.)

## II. Legal Standards

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a party to file a motion to dismiss for lack of personal jurisdiction. When there is no federal statute authorizing personal jurisdiction, the district court applies the law of the state in which the district court sits. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute is coextensive with federal due process requirements. Cal. Code Civ. Proc. § 410.10. Accordingly, the "jurisdictional analyses under state law and federal due process are the same." *Mavrix Photo, Inc.*, 647 F.3d at 1223 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (2004)). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under the minimum contacts test, there are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014).

A court may assert general personal jurisdiction over corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum

State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). There are two "paradigm all-purpose forums" in which a corporation will primarily be "at home" for the purposes of general jurisdiction: its place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137. General jurisdiction is not limited to these two forums, but it will only be available elsewhere in the "exceptional case" that a corporation's affiliations with a forum are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19; *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) ("Only in an 'exceptional case' will general jurisdiction be available anywhere else."). Indeed, under the modern jurisdiction theory, general jurisdiction "has played a reduced role," and "[the Supreme Court's] post-*International Shoe* opinions on general jurisdiction . . . are few." *Daimler*, 571 U.S. at 128-29.

Specific jurisdiction, on the other hand, is satisfied when the defendant's activities are directed toward the forum state and the defendant's liability arises out of or relates to those activities. *Id.* at 127. In the Ninth Circuit, courts employ a three-part test to determine whether a defendant's contacts suffice to establish specific jurisdiction: "(1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 620-21 (9th Cir. 1991) (emphasis omitted). The plaintiff bears the burden of satisfying the first two prongs, and if they are met, the burden shifts to the defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Mavrix Photo Inc.*, 647 F.3d at 1228.

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012). However, when the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a "prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). The court resolves all disputed facts in favor of the plaintiff. *Id.* at 672.

///

**B.     Motion to Dismiss Under Rule 12(b)(3)**

A party may move to dismiss an action based on improper venue pursuant to Rule 12(b)(3). Fed. R. Civ. P. 12(b)(3). Once a defendant challenges venue, the plaintiff bears the burden of demonstrating that the chosen venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In determining whether venue is proper, the pleadings need not be accepted as true and the court may consider facts outside of the pleadings. *Doe 1 v. AOL, LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

Venue in a civil action is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3). "The first two paragraphs of §1391(b) define the preferred judicial districts for venue in a typical case, [while] the third paragraph provides a fallback option." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). When venue is improper, the district court can either dismiss the action, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "A determination of improper venue does not go to the merits of the case and therefore [dismissal] must be without prejudice." *In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991).

**III.     Discussion and Analysis**

    **A.     Personal Jurisdiction**

    <u>1.</u>     General Jurisdiction

        *a.     GM*

Plaintiffs admit that GM is a Delaware limited liability company with its principal place of business in Detroit, Michigan. (Doc. 25 at ¶ 6; <u>see also</u> Doc. 29-1, Burnell Decl., at ¶ 3.) GM alleges that Plaintiffs do not and cannot allege the type of "constant and pervasive" contacts that are required

4

for this Court to conclude that this is an "exceptional" case in which general jurisdiction is nevertheless present. (Doc. 29 at 11, citing *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069-70 (9th Cir. 2015).) GM further alleges that Plaintiffs' allegations that GM owns and operates websites accessed by California residents (Doc. 25 at ¶¶ 1, 4-5) are not enough to establish general jurisdiction. (Doc. 29 at 11-12.) Plaintiffs note that GM argues the Court lacks general personal jurisdiction over it, but Plaintiffs do not contend general jurisdiction applies here. (Doc. 32 at 6, n.2.)

        b.     *Decibel*

Decibel is a corporation formed under the laws of Delaware with its principal place of business in the United Kingdom, and thus, Decibel alleges under the traditional "paradigm," California does not have general jurisdiction over Decibel. (Doc. 30 at 9-10; Doc. 30-1, Harris Decl., at ¶ 11.) Decibel further argues that this is not an "exceptional" case, as Plaintiffs have failed to allege facts that reveal any activity by Decibel that amounts to "substantial" or "continuous . . . and systematic" contacts necessary to find it "at home" in California. (Doc. 30 at 10.) According to Decibel, Decibel currently has only three employees within California, out of 39 nationwide, and Decibel has never had executive officers in California and does not pay California state sales taxes. (Harris Decl. ¶¶ 12-13.) Plaintiffs note that Decibel argues the Court lacks general personal jurisdiction over it, but Plaintiffs do not contend general jurisdiction applies here. (Doc. 31 at 6, n.2.)

        c.     *Analysis*

General jurisdiction requires Plaintiffs to show that Defendants' own affiliations with California are sufficiently "continuous and systematic" and that California essentially operates as Defendants' home. *Goodyear*, 564 U.S. at 919 (internal citation and quotation marks omitted). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be hauled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801 (internal citation omitted). Plaintiffs must prove that Defendants' contacts with California are of the type that "approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal citation omitted), holding modified by *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006). Only a limited set of affiliations that effectively render a corporate defendant at home in the

5

forum state will result in general jurisdiction lying over that defendant. *Daimler*, 134 S. Ct. at 760.

Neither GM nor Decibel are incorporated in California, and they do not have their principal places of business here. GM is a Delaware limited liability company with its principal place of business in Detroit, Michigan. (Doc. 25 at ¶ 6.) Decibel is a corporation formed under the laws of Delaware with its principal place of business in the United Kingdom. (Doc. 30 at 9.) Consequently, only in an "exceptional case" could they be subject to general jurisdiction in California. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015). Plaintiffs have not met their burden of showing that this is an exceptional case.

Plaintiffs' allegations do not satisfy the standard set out by the Supreme Court. *Daimler*, 134 S. Ct. at 758 n.11 (writing that conduct should be so continuous and systematic as to render the foreign corporation essentially at home in the forum State); *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (finding that a company's "sending of representatives to California to attend industry conferences, promote . . . products, and meet with suppliers" was insufficient to subject the company to general jurisdiction). In fact, Plaintiffs do not contend general jurisdiction applies here. (Doc. 31 at 6, n.2; Doc. 32 at 6, n.2.)

2. Specific Jurisdiction

    *a.    GM*

GM operates websites that are accessible throughout the United States (and internationally), including by California residents. Plaintiffs' allegations regarding Defendants' website are insufficient to establish an express aim at California.

The Ninth Circuit utilizes a sliding scale when examining whether a website provides grounds for personal jurisdiction. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-19 (9th Cir. 1997). "At one end of the scale [are] active sites 'where a defendant clearly does business over the Internet' and 'enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet,' which support[s] jurisdiction." *Mavrix Photo, Inc.*, 647 F.3d at 1226 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997)). "At the other end [are] passive sites 'where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions,' and which

do[es] not support jurisdiction." *Id*. at 1226-27 (quoting *Zippo*, 952 F.Supp. at 1124). Under this analysis, the Court determines jurisdiction by examining the "level of interactivity and commercial nature of the exchange . . . that occurs on the Web site." *Id*. at 1227 (quoting *Zippo*, 952 F.Supp. at 1124). The evidence provided about GM's website puts it solidly on the passive end of the website spectrum and does not support jurisdiction. There is no evidence of file exchange through GM's website or interactive features targeting California customers. Without facts showing GM specifically targeted California, the operation of an internationally accessible website is insufficient to serve as a ground for personal jurisdiction. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) (citing *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) ("The interactivity of a website is . . . a poor proxy for adequate in-state contacts [and] should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible.")

GM claims that Plaintiffs cannot establish that GM's alleged intentional acts—the installation of Session Replay software and purported interception of website users' electronic communications on GM's websites, (Doc. 25 at ¶ 15)—were expressly aimed at California. (Doc. 29 at 14.) GM's websites are accessible throughout the United States, not just in California. (Burnell Decl. ¶ 12; Doc. 25 at ¶ 17.) GM argues that Plaintiffs do not and cannot allege any intentional conduct designed specifically to target and attract Californians (rather than customers nationwide) to GM's websites. (Doc. 29 at 15; see Burnell Decl. ¶ 12.) The Session Replay software at issue records a random selection of website sessions from users nationwide; no geographic criteria affect which website sessions the software captures. (Doc. 33 at 4; Burnell Decl. ¶¶ 7-8.) The purpose of Session Replay software is to improve website functionality nationwide; it does not target California or distinguish California from any other state where GM's website is accessible. (Doc. 33 at 4.) GM contends that the mere interactivity of GM's website is not enough. (Doc. 29 at 15.) Therefore, GM argues, there is no basis to conclude that GM has "expressly aimed" the operation of its websites, let alone its use of Session Replay, at California in a manner sufficient to confer jurisdiction. (Doc. 29 at 16.)

The first amended complaint contains lengthy allegations that GM knew and foresaw that the wiretapping would impact Californians because they "form a significant portion of GM's customer

7

base," and because of the size of the California market and economy. (Doc. 25 at ¶ 15.) "The Websites' Privacy Policies include a specific section dedicated to California law, and the Websites each include a web page specifically referencing California law and directed specifically at Californians who visit the website[s]." (Id. at ¶ 16.) Further, it is alleged that "[b]ecause of the substantial California market, Defendants anticipated, desired, and achieved a substantial California viewer base." (Id. at ¶ 17.) Finally, Plaintiffs allege that Decibel's software collects users' "location at the time of the visit," meaning Defendants knew they were wiretapping California consumers. (Id. at ¶ 44.) However, GM counters that *Walden v. Fiore*, 571 U.S. 277, 289 (2014) holds that mere foreseeability that someone may be harmed in the forum state does not suffice to confer specific personal jurisdiction.

Additionally, Plaintiffs, citing to *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011), assert that courts may exercise personal jurisdiction when a website "with national viewership and scope appeals to, and profits from, an audience in a particular state." (Doc. 32 at 11.) However, as GM correctly claims, GM's websites lack a forum specific focus as the market for GM's automobiles is nationwide. (Doc. 29 at 17, citing *AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020).) GM distinguishes *Mavrix* because in that case, the defendant's website deliberately profited from California-based website traffic because the website used a particular advertising structure, under which "the more California viewers [the defendant] could bring to its website, the more money it would make from its advertisements directed to Californians." (Doc. 29 at 17-18.) GM asserts that there is no similar advertising structure in this case, and the fact that some visitors to GM's websites are from California "does not establish that [GM] tailored the website to attract [California] traffic." (Id. at 18.) Moreover, GM argues that any profits that it receives from California website visitors have nothing to do with GM's alleged use of Session Replay software. (Id.) GM contends that those profits result from those "'*users* who access the site rather than from [GM's] targeting of forum users who access the site,' and so they do not support personal jurisdiction." (Id.)

Plaintiffs contend that *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021), is dispositive of GM's arguments. (Doc. 32 at 7-9.) In *Ford*, the Supreme Court held that, in some instances, a court can assert personal jurisdiction over a defendant where there does not exist the

1 type of "strict causal relationship" that the defendant originally argued was lacking here. *See Ford*, 141 S. Ct. at 1026. One of these cases arose out of a car accident in Montana involving a Ford Explorer and the other out of a car accident in Minnesota involving a Crown Victoria. *Id*. at 1023. Both cars were designed in Michigan, the Explorer was manufactured in Kentucky and sold in Washington, and the Crown Victoria was manufactured in Canada and sold in North Dakota. *Id*.

Ford argued that a state only has jurisdiction over Ford if its "conduct in the State had given rise to the plaintiff's claims," meaning that Ford had "designed, manufactured, or—most likely—sold in the State the particular vehicle involved in the accident." *Id*. Because neither plaintiff could make that showing in the two cases at issue, Ford argued that neither Montana nor Minnesota could assert personal jurisdiction over it in these cases. *Id*.

The Supreme Court disagreed. The Court concluded that "Ford's causation-only approach finds no support in [the] Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities" and that "[n]one of [the Court's] precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Id*. at 1026 (quoting *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1776 (2017)). Rather, in some cases, specific jurisdiction can attach "when a company like Ford serves a market for a product in the forum State and the product malfunctions there." *Id*. at 1027.

Citing to *Ford*, Plaintiffs allege that GM extensively marketed its products and services to Californians. (Doc. 32 at 8; Doc. 25 at ¶¶ 13, 15.) Plaintiffs claim that GM knows it is marketing to Californians because its websites contain disclaimers related to California law. (Doc. 25 at ¶ 16.) Plaintiffs contend that this marketing attracted consumers like Plaintiffs to GM's websites, where they perused GM's selection of vehicles. (Doc. 25 at ¶¶ 2, 39-40.) Plaintiffs claim that during those visits, GM enabled Decibel to wiretap California consumers. (Doc. 25 at ¶¶ 33-38, 41-44.) Plaintiffs argue that under *Ford*, GM "reach[ed] out beyond its home" and "exploit[ed] a market" in California, therefore, Plaintiffs' lawsuit "arises out of" and "relates to" GM's extensive connections with California. (Doc. 32 at 8, citing *Ford*, 141 S. Ct. at 1025-26, 1028.)

However, in *Ford*, the Supreme Court stated that its holding, which involved physical purchases of cars, did not bear on the "doctrinal questions" associated with personal jurisdiction in the

online context. *Ford*, 141 S. Ct. at 1028 n.4 ("And we do not here consider internet transactions, which may raise doctrinal questions of their own.") (citing *Walden* v. *Fiore*, 571 U. S. 277, 290, n. 9 (2014)). Moreover, unlike in *Ford*, Plaintiffs' claims have nothing to do with GM's sales of vehicles in California or any other conduct by GM aimed at California. Indeed, as GM points out, neither Plaintiff even made a purchase on GM's websites. (Doc. 29 at 19.) The plaintiffs in *Ford* alleged product liability claims based on allegedly defective vehicles that Ford had urged Montana and Minnesota residents to buy and that then caused injury in the forum state. Although GM seeks to serve the market for automobiles in California, the sales of those automobiles, unlike in *Ford*, are not related to this suit. Plaintiffs here allege claims for invasion of privacy based on software used to improve user experience and functionality on a nationally accessible website that is operated from Michigan. The relevant events and alleged injury all occurred online. (Doc. 29 at 20.)

The Court finds the Northern District cases cited by GM in reply to be persuasive. (Doc. 33 at 3, n.1.) Specifically, in *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021), the court rejected specific jurisdiction where plaintiffs raised nearly identical claims as here. These types of claims were also rejected in *Electro Scan, Inc. v. Henrich*, 2019 WL 1299010, at *5 (E.D.Cal., 2019), when this Court held that a passive website, which "lacks file exchange through [the] website or interactive features targeting California customers," or where the website owner "specifically targeted California," do not establish personal jurisdiction. Thus, the Court finds there is no specific personal jurisdiction here.

Additionally, GM contends that Plaintiffs do not, and cannot, allege any facts suggesting that their claims "arise out of or relate to" GM's conduct in California. (Doc. 29 at 18.) Instead, Plaintiffs' claims arise from and relate to session recording software allegedly installed on GM's nationally accessible websites, software that GM licensed and used outside California, which allegedly assisted Decibel's interception of interactions with GM's websites. (Doc. 29 at 19; Doc. 33 at 7.) GM itself is not alleged to have intercepted its website users' communications and it actually cannot do so. (Doc. 33 at 7.) GM asserts in reply that Plaintiffs' claims against GM are predicated on GM's decision to enter a license agreement with a non-California vendor to provide software for its websites, and that transaction took place entirely outside of California and has nothing to do with GM's California sales

10

of vehicles. (Doc. 33 at 7.)

Accordingly, GM's operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction. *See Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018) ("If Premium can be haled into California merely on the basis of its universally accessible website, then, under Matus's proposed rule, it can be haled into every state, and respectively, every online advertiser worldwide can be haled into California.").

        b.      *Decibel*

Decibel entered into a software license agreement for GM's use of Decibel software, including a tool called Session Replay. (See Doc. 30 at 7; Doc. 31 at 6.) Decibel claims that the allegations do not establish forum-directed conduct. (Doc. 30 at 12.) The Court agrees.

Decibel's Session Replay feature was created in England, not in California (Harris Decl. ¶ 10), and Decibel did not embed or use Decibel software on any website owned or operated by GM (Harris Decl. ¶ 8). Additionally, Decibel asserts GM is not a California entity (Doc. 25 at ¶ 6), and the license by which GM uses Decibel software was entered into outside of California (Harris Decl. ¶ 9). Importantly, Decibel argues that it is one or more steps removed from the website activities alleged to permit the exercise of personal jurisdiction over it. (Doc. 30 at 13.) Decibel is in the business of licensing software for commercial use to companies—not for use on specific websites—and the decision of whether or how to implement Decibel software on any particular website is that of the customer, not Decibel. (Harris Decl. ¶ 3.) The website at issue here, chevrolet.com, is a GM website (see Doc. 25 at ¶¶ 8, 35), not a Decibel website. Accordingly, Decibel contends, Decibel had nothing to do with the content of the website, the privacy policy on that website, or whether Plaintiffs (or any other California residents) accessed the website. (Doc. 30 at 13.)

Decibel further argues that even if Plaintiffs' allegations about GM's website were somehow attributable to Decibel, those allegations still fail to demonstrate personal jurisdiction exists. (Doc. 30 at 13.) Plaintiffs' allegations related to the size of the California market, defendants' alleged knowledge that some California residents would visit the site, and statements in GM's privacy policy related to California law on GM's national website, do not amount to the directly targeted conduct

11

sufficient to establish jurisdiction over Decibel in California. (Doc. 30 at 13-14.) Operation of such a site must be combined with "something more—conduct directly targeting the forum"—to establish personal jurisdiction. *Wanat*, 970 F.3d at 1210 (quoting *Mavrix Photo, Inc.*, 647 F.3d at 1229). According to Decibel, Plaintiffs do not allege that GM's websites have a forum-specific focus and contends that this would be implausible because the automobile industry is not California-centered, but national (and even international). (Doc. 30 at 15.) Decibel asserts that Plaintiffs also do not allege that GM's websites contain advertisements specifically targeting California customers. (Doc. 30 at 15.) Rather, Decibel argues, the allegations in the first amended complaint, even if true, only support the notion that Defendants might foresee that a number of website visitors might be California residents, but that is insufficient to establish express aiming at the forum. (Doc. 30 at 15.) *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-70 (9th Cir. 2017) ("In *Walden*, the Supreme Court rejected our conclusion that the defendants' knowledge of the plaintiffs' strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum, comprised sufficient minimum contacts.") (internal quotation marks omitted).

In opposition, Plaintiffs allege that (1) Decibel entered into a contract with GM for the provision of Decibel's software; (2) Decibel intentionally provided its Session Replay software to GM; (3) "Decibel purposefully intercepted electronic transmissions from users of GM's Websites;" and (4) "[t]he conduct also was expressly aimed at California residents." (Doc. 31 at 8, citing Doc. 25 at ¶¶ 15-17, 33-38, 64-66, 74, 81, 91-93.) Decibel concedes in reply that the first two allegations recite intentional acts on the part of Decibel relating to an alleged contractual relationship with, and provision of software to, GM; however, Decibel asserts, these two alleged activities have nothing to do with California. (Doc. 34 at 6.) As previously stated, GM is a Delaware corporation with its principal place of business in Michigan (Doc. 25 at ¶ 6; see also Burnell Decl. ¶¶ 3-5), and neither the creation of the Session Replay feature, nor the contract under which GM uses Decibel software, has anything to do with California. (Doc. 34 at 6; Harris Decl. ¶¶ 9-10.) Accordingly, Plaintiffs have failed to establish that these first two intentional acts were expressly aimed at California.

Regarding the third allegation, Decibel asserts that Decibel's intentional acts were never expressly aimed at California, but rather, all of Decibel's alleged acts were aimed outside of

California, at GM and its websites. (Doc. 34 at 7.) Decibel argues that the fourth allegation is conclusory and argues that Plaintiffs' allegations about facts supporting that conclusion establish, at best, that Decibel may have foreseen the possibility of California residents visiting GM's website and having their interactions with the website recorded. (Doc. 34 at 7.) Plaintiffs' allegations fail to demonstrate purposeful direction at California. Accordingly, neither the content of the website, nor the number of California visitors to the website, can be used to show that Decibel expressly aimed its activities at California.

Moreover, Decibel is steps removed from the website activities that allegedly would permit the exercise of personal jurisdiction over it. In reply, Decibel cites to cases where a court has dismissed wiretapping claims against providers of software similar to Decibel, because those software providers merely provided a tool for a website owner to record and analyze its own data—and thus, were not third-party eavesdroppers. (Doc. 34 at 5, n.1.) For instance, *Graham v. Noom, Inc.*, No. 3:20-cv-6903, 2021 WL 1312765 (N.D. Cal. Apr. 8, 2021), is instructive. Just as in *Graham*, the first amended complaint here establishes only that Decibel is GM's vendor for a software device that GM uses to analyze its data. However, a vendor's selling a product to GM, even if GM has substantial business in California and the vendor knew it, does not establish specific personal jurisdiction over the vendor. *See also Johnson*, 2021 WL 1312771.

Plaintiffs' allegations fail to demonstrate that Decibel expressly aimed its activities at California, and accordingly, fail to demonstrate personal jurisdiction exists.

**B. Transfer**

In the alternative to dismissal, Defendants request transfer of the action. Section 1631 states in relevant part:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

To transfer a case pursuant to 28 U.S.C. § 1631, the transferor court must lack jurisdiction, the

transferee court must be able to exercise jurisdiction, and the transfer must serve the interests of justice. *Rodriguez-Roman v. INS*, 98 F.3d 416, 424 (9th Cir. 1996). A case can only be transferred to a district where it originally "could have been brought." 28 U.S.C. § 1631. "This means the transferee court must have subject matter jurisdiction, proper venue, and defendant must be subject to personal jurisdiction and be amenable to service of process in that district." *Kennedy v. Phillips*, C11-1231-MJP, 2012 WL 261612, at \*4 (W.D. Wash. Jan. 30, 2012) (citing *Shapiro v. Bonanza Hotel Co.*, 185 F.2d 777, 780 (9th Cir. 1950)). "In cases involving multiple defendants, the transferee district must be one in which personal jurisdiction and venue requirements would have been satisfied *as to all defendants*." *Id.* (emphasis in original). In deciding whether to transfer rather than dismiss, courts consider whether the failure to transfer would prejudice the litigant and other equitable factors. *Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001).

GM asserts that if the case is not dismissed, the action could be transferred to the District of Delaware.[1] (Doc. 29 at 21-22.) Decibel, as an alternative to dismissal, "seeks transfer to the District of Delaware pursuant to 28 U.S.C. § 1631 (to cure the jurisdictional defects) or 28 U.S.C. § 1406 (to cure improper venue)." (Doc. 30 at 2, 17-20.) In Plaintiffs' opposition to GM's motion to dismiss, they state that: "If—and only if—this Court finds that it does not possess personal jurisdiction over GM *and* Decibel, Plaintiffs would consent to transfer to the Eastern District of Michigan rather than dismissal." (Doc. 32 at 21.) In Plaintiffs' opposition to Decibel's motion to dismiss, they state that transfer is not warranted. (Doc. 31 at 7.)

Additionally, in reply, GM contends that because personal jurisdiction in California is contested, the Court should transfer this case to either the District of Delaware or the Eastern District of Michigan. (Doc. 33 at 8.) Indeed, "[c]ourts have repeatedly held that a change of venue from a forum where there is a difficult question of personal jurisdiction or venue to a district where there are not such uncertainties serves the interest of justice." (Id., citing *Four Jays Music Co. v. Apple, Inc.*, 2020 WL 7862123, at \*5 (C.D. Cal. Dec. 1, 2020).)

As stated above, a case can only be transferred to a district where it originally "could have

---

[1] GM seeks transfer pursuant to 28 U.S.C. § 1404(a) (Doc. 29 at 20-24; Doc. 33 at 8-11); however, the Court finds transfer appropriate pursuant to 28 U.S.C. § 1631, as argued by Decibel (Doc. 30 at 17), and conducts the analysis accordingly.

14

been brought." 28 U.S.C. § 1631. Both GM and Decibel are incorporated in Delaware. (See Doc. 25 at ¶¶ 6, 9.) Therefore, both defendants are subject to general jurisdiction in Delaware. (Doc. 29 at 21, citing *Daimler*, 571 U.S. at 137.) GM further asserts that because GM's and Decibel's principal places of business are in different states (Doc. 25 at ¶¶ 6, 9), the District of Delaware is the only federal court that can exercise general jurisdiction over both defendants. (Id.) Moreover, the District of Delaware would have subject matter jurisdiction to hear the action under 28 U.S.C. § 1332(d)(2)(A). (Id.) Therefore, Defendants are subject to personal jurisdiction in Delaware and venue in the District of Delaware is proper under 28 U.S.C. § 1391(b), (c), and that district is one where the action "could have been brought." 28 U.S.C. § 1631.

Having found above that this court lacks personal jurisdiction over the Defendants, the sole issue remaining under 28 U.S.C. § 1631 is whether transfer would be in the interest of justice. Generally, "transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)) (citation omitted). Decibel contends that "[t]ransfer to the District of Delaware (where venue is also proper) will lead to a more just, speedy, and inexpensive resolution of this case for all parties." (Doc. 30 at 17.) Plaintiffs also acknowledge that this District is more congested than the District of Delaware. (Doc. 31 at 19; Doc. 32 at 21; Doc. 33 at 11.) Transfer serves the interest of justice because it will prevent unnecessary delay caused by requiring plaintiffs to re-file. (Doc. 30 at 17, citing *Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001).) Therefore, the conditions for transfer to the District of Delaware are met here.

**IV.     Order**

Based upon the foregoing, the Court **ORDERS**:

1.      Defendants' Motions to Dismiss (Docs. 29, 30) are **GRANTED**;

///
///
///
///

15

2. This case is **TRANSFERRED** to the United States District Court for the District of Delaware.

IT IS SO ORDERED.

    Dated: __**May 25, 2021**__           _____ /s/ Jennifer L. Thurston
                                                               CHIEF UNITED STATES MAGISTRATE JUDGE